ALEXANDER L. BORLAND *et ux. vs.* JAMES H. CLIFFORD *d.b.a.*
U. S. IMPROVEMENT COMPANY.

FEBRUARY 28, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This action of assumpsit was brought to recover damages resulting from defendant's alleged breach of an express warranty in a contract to furnish certain materials and labor in painting the plaintiffs' house.  A jury in the superior court returned a verdict for the plaintiffs in the sum of $400 and thereafter the trial justice denied the defendant's motion for a new trial.  The case is here on defendant's bill of exceptions to that and other rulings made in the course of the trial.

The facts are mostly undisputed.  Plaintiffs were the owners of a house in Seekonk, Massachusetts. Defendant, doing business as U. S. Improvement Company, was in the business of painting houses.  As a result of certain advertising by defendant and subsequent negotiations between him, his agent and the plaintiffs, a written contract was executed under date of August 5, 1942. By that contract the defendant agreed "to furnish all material and labor and perform all work as described" in the specifications therein set forth.

These specifications substantially concerned the replacing of defective clapboards where needed and the painting of the clapboards on all exterior walls with "Texite" and the general trim with "trimbright".

For this work the plaintiffs agreed to furnish the necessary clapboards and to pay the defendant the sum of $380, payable $80 on the "start of job" and the balance in twelve monthly installments of $26.32 each. Just before the signatures on the contract the following clause appears: "Company's Guarantee: The Contractor guarantees its material and workmanship 15 years. It will replace all faulty or defective material or workmanship free of charge to the Owner, upon written notice." The contract was drawn by the defendant and the plaintiffs relied upon his representations and those of his agent for all their knowledge concerning "Texite".

Defendant finished the work referred to in the contract in September 1942. About a month later plaintiffs notified defendant that cracking and peeling began to appear on the clapboards under a window. Thereupon the defendant sent the original painter who attempted to remedy a portion of such defects. A short time thereafter more cracking, peeling and chipping off began to show up elsewhere and this continued progressively until the condition was general on all the clapboards. Complaints were made from time to time to the defendant, who personally came to look at the house and promised to send somebody to remedy the defects. After a reasonable delay without obtaining relief, plaintiffs finally consulted an attorney who wrote defendant, on June 23, 1943, confirming the plaintiffs' previous complaints and demanding that he live up to his contract. As a result of such complaints defendant did send other painters; but, after inspection, one said that it was "too big a job for him" and the others failed to return to complete the work as promised, whereupon this action was commenced. All payments required of the plaintiffs under the contract were duly made.

Apparently the only conflict in the evidence results from a suggestion by a witness for the defendant that the possible cause of the defects appearing on the clapboards was moisture from within the walls and building and not from inferior material or workmanship. This was completely denied by the plaintiffs, who insisted that the house was dry; that the walls contained no moisture or moss, as suggested; and that they were in reasonably good condition excepting the need of replacing certain clapboards here and there and of painting the exterior as specified in the contract.

The defendant contends that the trial justice misconstrued the contract and that this basic error led him to make all the rulings that are the subject of certain of his exceptions, which he argues as one. The defendant appears to contend thereunder: (1) That the only obligation of the defendant under the written contract was to apply to the outer walls of the house a certain product, sold under the trade name of Texite, in a proper and workmanlike manner, and that having applied Texite in that manner the defendant fully complied with his contract; (2) that the product Texite was requested by plaintiffs and if it did not live up to the representations of the manufacturer, the liability was on the manufacturer and not on this defendant under any implied warranty; (3) that the express warranty in this contract was comparable with that which was involved in the case of *Beggs* v. *James Hanley Brewing Co.*, 27 R. I. 385, and that such case supported the defendant's theory of the law as particularly expressed in his requests for instructions to the jury.

In our opinion none of these contentions has merit. The first one assumes that the defendant's entire obligation under this contract was merely to apply "Texite", in a workmanlike manner, to the clapboards of the outer walls of the plaintiffs' house. Even a casual reading of the contract will show that this ground is untenable. It entirely ignores the provision that "The Contractor guarantees its *material and workmanship* 15 years. It will replace *all faulty or defective*

*material or workmanship* free of charge to the Owner, upon written notice." (italics ours)

Under the second contention it is argued that these plaintiffs ordered a product, Texite, that was well known and was sold under the representations of the manufacturer; that plaintiffs received Texite; and that there is no implied warranty to bind the defendant, who made no representations in addition to those of the manufacturer. There are several defects in this argument: First, this is not a case where the plaintiffs merely purchased a product that was well known and was being sold under a trade name; nor is it one where the plaintiffs requested and purchased such a product merely for their own special purpose. In our opinion it is neither a sale nor a contract of sale; but it is a simple contract to furnish material and labor and to make certain repairs necessary in the painting of a house. Secondly, the contract was in writing and contains an express "guarantee" in the nature of a warranty of both material and workmanship. The action is based upon defendant's breach of such express warranty and therefore does not depend upon, nor raise any question of, implied warranty. Thirdly, this argument assumes that the defendant made no representations concerning Texite. As a matter of undisputed fact he had inserted in the newspaper, over his own business name, the advertisement which, among other statements concerning the desirability and durability of Texite as a covering for clapboards on exterior walls, represented that it gave "protection equivalent to 4 or 5 coats of paint". The manufacturer's name nowhere appeared in that advertisement or in the contract. Under such circumstances, apart from any question whether they were the manufacturer's representations, the defendant expressly made them his own and obligated himself by and to the extent of the comprehensive warranty appearing in the contract.

The defendant's third contention is premised on the assumption that the express warranty in the case is comparable with that which was involved in the case of *Beggs* v. *James*

*Hanley Brewing Co., supra.* A comparison of the two express warranties will readily show a vital difference. In the *Beggs* case the warranty read: "The McClave system is adapted for the burning of fine anthracite fuel; workmanship and material first class in every particular." In that case the defendant tried to read an additional implied warranty into the contract; but the court said, at page 394: "The defendant did not exact a warranty that, with the apparatus in use under the boilers at its brewery, the boilers would produce sufficient steam for the operation of the brewery." What the defendant thus failed to exact in the *Beggs* case was definitely inserted in the contract in the instant case in the form of an express and comprehensive warranty. In our opinion the trial justice, when making his rulings and giving instructions to the jury, did not misconceive the law nor misconstrue the defendant's obligation under this contract.

Since all of the defendant's exceptions, other than that to the denial of his motion for a new trial, are premised on the trial justice's alleged error in misconstruing the contract and in misconceiving the law as above considered, we need not discuss them further.

On defendant's motion for a new trial, no specific complaint was made as to excessive damages or to the findings of fact on the evidence under the law as given in the charge to the jury. The charge, in these respects, was not excepted to by the defendant, and the trial justice has expressly approved the verdict and amount thereof as being responsive to the true merits of the case. We have examined the evidence and find no error in this ruling.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*John M. Booth,* for plaintiffs.

*William B. Sweeney, Everett D. Higgins,* for defendant.